A06A0551. THE STATE v. DUKES.
(630 SE2d 847)

JOHNSON, Presiding Judge.

The dispositive issue in this case is whether police officers had probable cause to arrest Timothy Dukes for obstruction. Because the officers did not have probable cause to arrest Dukes, the trial court correctly granted Dukes' motion to suppress evidence of suspected cocaine found after the unlawful arrest.

"In reviewing a ruling on a motion to suppress, we construe the evidence most favorably toward upholding the trial court's findings and judgment. We apply a de novo standard of review to the trial court's application of the law to undisputed facts."[1] In the instant case, the facts are not in dispute.

On October 21, 2004, a patrol officer with the Whigham Police Department received a report from somebody that some people, including Dukes, were dealing drugs near the Whigham Country Store. The officer, who said he had previously received similar reports, drove to the store and saw Dukes and others there. The officer saw a man approach Dukes, someone point to the officer's patrol car across the street, and Dukes and the man then walk in opposite directions. After seeing this happen twice, the officer called the Southwest Georgia Drug Task Force for assistance.

Three drug task force officers responded to the call. The three task force officers, as well as the patrol officer, approached Dukes and two other men sitting at a picnic table beside the store. While one of the task force officers spoke with Dukes, the other officers spoke with the other men. The task force officer asked Dukes what he was doing,

---

[1] (Citations omitted.) *Leon-Velazquez v. State*, 269 Ga. App. 760 (605 SE2d 400) (2004).

and Dukes said that he was "just sitting around." The officer asked Dukes if he had any identification on him, and Dukes said it was in his vehicle.

The officer then asked Dukes if he had any drugs on him and if he would mind emptying his pockets onto the picnic table. Dukes placed the items in his pockets onto the table and then ran around the back of the building. The officer and another task force officer chased after him. Behind the building, Dukes tripped and the officers caught him. The task force officer who had been questioning Dukes immediately arrested him, placing him in handcuffs, for obstruction of an officer by fleeing.

The officer searched Dukes, looking in his pockets, but did not find anything. The task force officer then placed Dukes in the back of the patrol officer's vehicle. The patrol officer drove Dukes to the Grady County Detention Center. At the detention center, the officer searched his vehicle and found a cellophane wrapper containing a white powdery substance.

Dukes was charged with possession of cocaine and obstruction of a law enforcement officer. Dukes moved to suppress evidence of the suspected cocaine. The trial court granted the motion, finding that the officer's request that Dukes empty his pockets amounted to an unlawful seizure that was not supported by probable cause.

The state appeals, arguing that in asking Dukes to empty his pockets the officer did not seize Dukes, and that once Dukes fled, the officers had probable cause to arrest him for obstruction, so evidence of the alleged cocaine found subsequent to that lawful arrest should not have been suppressed. While we agree with the state that the officers' initial encounter with Dukes was not an unlawful seizure, we disagree with the rest of the state's analysis and instead conclude that the trial court's ruling suppressing the evidence is correct and must be affirmed.[2]

The United States Supreme Court has sculpted out three tiers of encounters between the police and citizens: (1) communication between police and citizens involving no coercion or detention, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.[3]

> In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity,

---

[2] See *Fincher v. State*, 276 Ga. 480, 481 (2) (578 SE2d 102) (2003) (trial court's ruling on a motion to suppress will be upheld if it is right for any reason).

[3] *Holmes v. State*, 252 Ga. App. 286, 287 (556 SE2d 189) (2001).

as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.[4]

The state claims that the officers' initial contact with Dukes, prior to his fleeing, was a second-tier encounter supported by reasonable suspicion. The claim is incorrect. Instead of being a second-tier encounter, the officers' initial contact with Dukes was a first-tier encounter. That is, the officers did not seize Dukes; rather, they simply approached and questioned him without any seizure.

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.[5]

In this case, there is no evidence that the officers' presence was threatening, that any weapon was displayed, that any physical touching occurred or that any language indicated that Dukes was compelled to comply with the police requests. Accordingly, the initial contact between the officers and Dukes did not amount to a seizure.

Nevertheless, even though the officers lawfully approached and asked questions of Dukes, they did not, contrary to the state's claim, have the reasonable suspicion of criminal activity needed for a second-tier detention prior to Dukes' flight. At that point, the officers knew only that the patrol officer had received a report that Dukes and others were dealing drugs from that location, and that the patrol officer had seen Dukes and another man turn and walk away from each other after looking at the patrol car.

---

[4] (Citations and punctuation omitted.) *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000).

[5] (Citation and punctuation omitted.) *Cutter v. State*, 274 Ga. App. 589, 592 (1) (617 SE2d 588) (2005).

The record is devoid of any evidence about the details of the report of drug activity received by the patrol officer. The officer gave no testimony as to who provided the report, the exact time he received it or how much time elapsed before he acted on the report. And while the patrol officer said there had been previous similar reports, he also did not specify the sources or times of those reports, he did not testify that any of those prior reports had ever led to arrests or been confirmed as accurate, and he did not characterize the location in question as a known drug area.

Given the complete absence of evidence about the source of the report, we have no way of knowing whether it came from a concerned citizen, a confidential informant, or an anonymous tipster. The most that we can say is that the tip came from an informant of unknown reliability.[6] "Although a tip provided by an informant of unknown reliability will not ordinarily create a reasonable suspicion of criminal activity, if the tip is detailed enough to provide some basis for predicting the future behavior of the suspect, reliability may be established if the details are corroborated by the observations of the police."[7]

In the instant case, the tip was not detailed and made no prediction about Dukes' future behavior.[8] And although the patrol officer did confirm that Dukes was at the store, he did not see Dukes or anyone else in possession of drugs and he did not see a suspected drug transaction occur.[9] Rather, all he saw was Dukes and another man walk away from each other after looking toward his patrol car. Given the tip's lack of detail and failure to predict future behavior, the officer's observation of Dukes' conduct may have warranted further investigation, but it did not rise to the level of reasonable suspicion needed to justify a second-tier detention of Dukes.[10]

However, when Dukes suddenly fled, the officers arguably obtained reasonable suspicion of criminal activity supporting a brief investigative stop. "Flight is a circumstance sufficient to give an

---

[6] See *Tiller v. State*, 261 Ga. App. 363, 365 (582 SE2d 536) (2003).

[7] (Citation and punctuation omitted.) *Brown v. State*, 223 Ga. App. 364, 366 (1) (477 SE2d 623) (1996).

[8] See *McKinley v. State*, 213 Ga. App. 738, 740 (445 SE2d 828) (1994).

[9] See *State v. Morgan*, 260 Ga. App. 263, 265 (2) (581 SE2d 296) (2003).

[10] See *Florida v. J. L.*, 529 U. S. 266 (120 SC 1375, 146 LE2d 254) (2000) (anonymous tip providing no predictive information by which police could test informant's knowledge or credibility lacked the indicia of reliability needed to give police reasonable suspicion); *Holmes*, supra, 252 Ga. App. at 288-289 (person approaching passenger side of car in high-crime area, then walking away, then walking back toward another car parked in street did not provide reasonable suspicion required for a *Terry* stop).

articulable suspicion of illegal activity."[11] But even if we assume for the sake of argument that the officers had reasonable suspicion of illegal activity after Dukes fled, the undisputed fact is that the officers did not conduct the brief investigative stop that may have been justified by the circumstances.[12] Instead, they executed a full-blown arrest for obstruction based solely on Dukes' flight.

Accordingly, the controlling question presented by this appeal is whether the officers had probable cause to arrest Dukes for obstruction. "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor."[13] As discussed above, at the time Dukes fled from the officers, they were engaged in a proper first-tier encounter with him, and thus they were lawfully discharging their official duties. Nevertheless, Dukes' flight from that encounter did not obstruct or hinder the officers' discharge of their *official* duties.

What made that initial encounter lawful was that the officers did not detain Dukes. Because the officers lacked reasonable articulable suspicion, not only did they have no authority to detain Dukes, but he had the concomitant right to leave the first-tier encounter. During such an encounter, the officer may not detain the citizen or create the impression that the citizen may not leave.[14]

Since Dukes had the right to leave the encounter, his exercise of that right, even if accomplished by running, cannot constitute obstruction. That is to say, even though the officers were lawfully discharging their official duties at the time Dukes fled, those official duties during the first-tier encounter did not include detaining Dukes or preventing him from leaving. Consequently, by exercising his right to leave the first-tier encounter, Dukes did not, as a matter of law or fact, hinder or obstruct the officers' lawful discharge of their duties.[15] The officers thus had no probable cause to arrest for obstruction by flight when the flight was from a first-tier encounter that Dukes had every right to terminate. Because the officers arrested Dukes without probable cause, the evidence discovered as a result of that unlawful arrest must be suppressed.[16]

*Judgment affirmed. Miller and Ellington, JJ., concur.*

---

[11] (Citation and punctuation omitted.) *Sharp v. State*, 275 Ga. App. 487, 488 (1) (621 SE2d 508) (2005).

[12] Compare *Lloyd v. State*, 242 Ga. App. 503, 504 (530 SE2d 228) (2000).

[13] OCGA § 16-10-24 (a).

[14] *State v. Devine*, 276 Ga. App. 159, 160 (622 SE2d 854) (2005).

[15] See *Porter v. State*, 224 Ga. App. 276, 280 (2) (480 SE2d 291) (1997) (no obstruction where no evidence that defendant failed to submit to lawful authority).

[16] See *State v. Alexander*, 245 Ga. App. 666, 668 (538 SE2d 550) (2000) (fruits of unlawful arrest may not be introduced into evidence).

DECIDED MAY 8, 2006.

*Joseph K. Mulholland, District Attorney, Samuel M. Olmstead, Assistant District Attorney*, for appellant.

*Richard Parker*, for appellee.