A09A1005. THE STATE v. MILLER.
(684 SE2d 80)

ANDREWS, Presiding Judge.

The State appeals from the trial court's order granting Ashaunte Miller's motion to suppress the crack cocaine found in his pants pocket during a pat-down search. Because the trial court erred in holding that officers did not have reasonable articulable suspicion to justify a *Terry* stop of defendant Miller, we reverse.

In ruling on a motion to suppress, the trial court's findings as to disputed facts are reviewed to determine whether the ruling was

clearly erroneous. *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994). "[W]here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." Id. In this case, the facts are not in dispute.

The evidence at the suppression hearing was that officers were patrolling the area in question because of information of drug activity and of weapons being fired in the area. At around 7:00 on the evening in question, officers patrolling in a van saw several men standing around a car in a vacant lot. One of the men was tinting the windows on the car and the car did not have a tag.

Officers testified that it was common for thieves to put a "quick tint" on the outside of windows of stolen cars.[1] The van carrying the officers stopped and several officers got out and walked toward the men standing around the car. Although the officers told the men not to move, Miller "started walking . . . at a fast pace" toward the house next door. One of the officers chased him and told him to stop, but Miller resisted. As the officer forced Miller to the ground, he saw a gun sticking out of Miller's pants pocket. The officer patted Miller down and found three rocks of crack cocaine in a plastic baggie in his pocket.

The trial court held that the officers did not have reasonable articulable suspicion of illegal activity to justify a *Terry* stop. Therefore, this was a first-tier encounter and Miller should have been free to leave. This appeal followed.

The State argues that the officers had a reasonable articulable suspicion to momentarily detain the men when they saw them surrounding a car without a tag while tinting the car's windows. The State contends that, based on the officers' experience, the window tinting was often performed on stolen cars and the men gathered around the car could have been trying to conceal a stolen automobile. We agree.

> The United States Supreme Court has sculpted out three tiers of encounters between the police and citizens: (1) communication between police and citizens involving no coercion or detention, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

---

[1] It was later determined that the car was stolen.

*State v. Dukes*, 279 Ga. App. 247, 248 (630 SE2d 847) (2006). In the first level or tier,

> police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.

(Punctuation omitted.) *McClain v. State*, 226 Ga. App. 714, 716 (487 SE2d 471) (1997).

The Court in *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968), recognized

> that although a police officer may not have probable cause to arrest someone, if there is a reasonable suspicion of criminal wrongdoing, based upon specific and articulable facts from which it can be determined that the action of the police officer is not arbitrary or harassing, the police officer may make a brief, investigatory detention of the individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information.

*Lee v. State*, 201 Ga. App. 827, 829 (412 SE2d 563) (1991).

> [A]rticulable suspicion that the law has been or is about to be violated is less than probable cause, but greater than mere caprice. What is necessary is a founded suspicion, some basis from which the court can determine that the detention was not arbitrary or harassing. Thus, in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweigh[s] the momentary inconvenience and indignity of investigatory detention. Each case turns on its own circumstances.

(Citations omitted.) *Garmon v. State*, 271 Ga. 673, 677 (524 SE2d 211) (1999). In determining whether the officer had a sufficient reasonable basis for suspecting criminal activity, we look to the

totality of the circumstances surrounding the stop. See *Crowley v. State*, 267 Ga. App. 718, 719 (601 SE2d 154) (2004).

In this case, the undisputed testimony from the officers was that, based on the officers' experience, outside window tinting was often performed on stolen cars, this car was being worked on in a vacant lot, it had no tag on it, and the men were gathered around the car in a way that could be construed as trying to conceal a stolen automobile.

Therefore, under the "totality of the circumstances" test, the officers were allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." (Punctuation omitted.) *Howard v. State*, 265 Ga. App. 835, 836 (595 SE2d 660) (2004), citing *United States v. Arvizu*, 534 U. S. 266, 273 (122 SC 744, 151 LE2d 740) (2002).

Unlike the officers in *Black v. State*, 281 Ga. App. 40 (635 SE2d 568) (2006), relied on by the trial court, there was sufficient information in this case for the court to find that the officers' conduct was not arbitrary and harassing and not generated by mere caprice. In *Black*, officers were watching the Blacks' house based on information of drug activity. The Blacks' son left the house in a truck with two friends, and officers followed. When the truck pulled into a gas station, two patrol cars pulled in after it. Black saw the patrol cars and started to walk away from the gas station toward some woods. When one of the officers tried to question him, Black ignored him at first but then became belligerent and told the officer that he had no right to speak to him. Id. at 40-41. The officer then grabbed Black and arrested him for obstruction. Id.

This Court held that because Black's only actions were to leave his home, go to a gas station, and refuse to respond to the officer's questioning, the officers had no basis for suspecting criminal activity. *Black*, supra at 44. That is not true of the case before us.

Accordingly, in light of the facts set out above, we conclude that the officers made a valid *Terry* stop and Miller was not free to leave. See *In the Interest of E. C.*, 292 Ga. App. 798, 800 (665 SE2d 896) (2008) (officers had reasonable suspicion to stop group of teenagers standing on a street corner during school hours in an area with a high rate of burglaries). Accordingly, it follows that the trial court erred in granting Miller's motion to suppress.

*Judgment reversed. Miller, C. J., and Barnes, J., concur.*

DECIDED AUGUST 20, 2009 —
RECONSIDERATION DENIED SEPTEMBER 10, 2009

*Larry Chisolm, District Attorney, Christine S. Barker, Assistant District Attorney*, for appellant.
*Michael L. Edwards*, for appellee.