**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 24, 2017**

# In the Court of Appeals of Georgia

A17A0733. JOHNSON v. THE STATE.

BRANCH, Judge.

Following a bench trial at which he stipulated to the facts, Willie Johnson, III, was convicted of a single count each of possession of less than an ounce of marijuana and obstruction of an officer. Johnson now appeals his conviction, asserting that the trial court erred in denying his motion to suppress evidence discovered by police after they arrested him without probable cause. We agree and we therefore reverse Johnson's conviction.

> At a hearing on a motion to suppress, the trial judge sits as the trier of fact. On appeal from the grant or denial of such a motion, therefore, this Court must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. However,

> we owe no deference to the trial court's conclusions of law and are instead free to apply anew the legal principles to the facts.

*Bodiford v. State*, 328 Ga. App. 258, 258 (761 SE2d 818) (2014) (citations and punctuation omitted). See also *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012) (where "the evidence at a suppression hearing is uncontroverted . . . we conduct a de novo review of the trial court's application of the law to the undisputed facts") (citation omitted).

The relevant facts in this case are undisputed and show that on April 27, 2016, Officer Jalany Rogers of the Clayton County Police Department was on a routine foot patrol in an area of the county known for a high rate of crime and drug use. Part of this patrol included a walk-through of property on which the Southside Inn is located.[1] As they patrolled the hotel property, Rogers and his partner climbed an outdoor stairway and rounded a corner, where they saw a group of five men standing in the breezeway. Rogers made eye contact with Johnson, who then looked away and pulled up his pants. According to Rogers, the fact that Johnson pulled up his pants indicated that he was about to run from police. Upon seeing Johnson pull up his

---

[1] The hotel's owner had requested these routine patrols of the property because of his concern about the high crime rate in the area.

pants, therefore, Rogers yelled to him, "Don't do it," which Rogers believed communicated to Johnson that he was not free to leave. Johnson, however, ignored that command and fled on foot. Rogers then pursued Johnson while ordering him to stop, which Johnson declined to do. The chase took the men across the street, over three fences, and through a trailer park, cemetery, and creek before Rogers was able to apprehend Johnson. As soon as Rogers made physical contact with Johnson, he subdued him with a Taser and placed him under arrest for obstruction of an officer. During a search of Johnson incident to his arrest, police found marijuana in his pants pocket.

Following his arrest, Johnson was charged with possession of less than one ounce of marijuana, obstruction of an officer, and loitering or prowling. Prior to trial, Johnson filed a motion to suppress the marijuana, arguing that its discovery resulted from his illegal arrest. After a hearing at which Rogers was the only witness,[2] the trial court entered an order denying this motion. Johnson then agreed to a bench trial at which he stipulated to the facts established at the motion to suppress hearing and the fact that the substance found on his person was marijuana. Based on this evidence,

---

[2] The trial court's order shows that the judge credited Rogers' testimony in its entirety.

the trial court found Johnson guilty of both possession of marijuana and obstruction of an officer.[3] Johnson now appeals his conviction.

On a motion to suppress, the State bears the burden of proving that the search at issue did not violate the Fourth Amendment. *Dominguez v. State*, 310 Ga. App. 370, 372 (714 SE2d 25) (2011). To carry its burden in this case, because the marijuana was discovered after Johnson's arrest, the State was required to show that police had probable cause to arrest Johnson for obstruction of an officer. See *Ewumi v. State*, 315 Ga. App. 656, 662 (1) (727 SE2d 257) (2012) (because police had no probable cause to arrest defendant for obstruction, the drugs discovered in the search incident to arrest were inadmissible).

In denying Johnson's motion to suppress, the trial court relied on the United States Supreme Court's decision in *Illinois v. Wardlow*, 528 U. S. 119, 125 (120 SCt 673, 145 LE2d 570) (2000), which held that "unprovoked flight" after a citizen merely sees (but does not interact with) the police, taken together with other suspicious factors, may provide police with a basis for a second-tier investigatory

---

[3] The court also granted the State's motion to nolle prosequi the charge of loitering or prowling.

detention.[4] In *Wardlow*, the Supreme Court found that police had a basis for a second-tier stop of the defendant where, as officers approached an area known for heavy narcotics trafficking, they saw the defendant loitering outside of building while holding an opaque bag. As soon as the defendant saw the officers' marked patrol car, he fled down a nearby alley and away from the building. The court found that these facts gave police reason to suspect that the defendant "was involved in criminal activity, and, therefore [to] investig[ate] further." Id. Consequently, the court concluded that the evidence that resulted from the brief investigatory detention of the defendant was admissible. Id.

Citing *Wardlow*, the trial court found that Johnson's presence in a "high crime/high drug activity area with four other males," together with his "unprovoked" flight from a "first-tier encounter" with officers provided police with a reasonable suspicion of criminal activity and therefore allowed them to conduct a brief

---

[4] Our Fourth Amendment jurisprudence recognizes three tiers of police-citizen encounters: a first-tier encounter involves only voluntary communications between police and citizens without any coercion or detention by law enforcement; a second-tier encounter involves a brief detention of a citizen by police to investigate the possibility that a crime has been or is being committed; and a third-tier encounter is an arrest and must be supported by probable cause. See *In the Interest of J. B.*, 314 Ga. App. 678, 680 (1) (725 SE2d 810) (2012); *State v. Harris*, 261 Ga. App. 119, 121 (581 SE2d 736) (2003).

investigatory detention of Johnson. Thus, when Johnson refused to cooperate with this detention (by continuing his flight even after police ordered him to stop), police had probable cause to arrest him for obstruction. Given the undisputed facts, however, we find that the trial court's legal conclusions are erroneous.

Unlike the police in *Wardlow*, the officers in this case did not use Johnson's flight to support a second-tier investigatory detention. "Instead, they executed a full-blown arrest for obstruction based solely on [Johnson's] flight" from what the trial court found was an "initial . . . first-tier encounter" with police. *State v. Dukes*, 279 Ga. App. 247, 251 (630 SE2d 847) (2006). Our law is clear, however, "that a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter," *In the Interest of J. B.*, 314 Ga. App. at 681 (1) (citation and punctuation omitted), and "[e]ven running from police during a first-tier encounter is wholly permissible." *Black v. State*, 281 Ga. App. 40, 44 (1) (635 SE2d 568) (2006). Thus, an individual who leaves (or even flees) a first-tier encounter with police is not guilty of obstruction. *In the Interest of J. B.*, 314 Ga. App. at 681 (1); *Black*, 281 Ga. App. at 44 (1); *Dukes*, 279 Ga. App. at 249. Accordingly, in light of both the unrefuted testimony of Rogers and the trial court's findings, we must conclude that

6

because [Johnson] had the right to leave the first-tier encounter, his exercise of that right, even if accomplished by running, cannot constitute obstruction. That is to say, even though the officer was lawfully discharging his duties at the time [Johnson] fled, those official duties during the first-tier encounter did not include detaining [Johnson] or preventing him from leaving. . . . Therefore, by exercising his right to leave a first-tier encounter, as a matter of law, [Johnson] did not hinder or obstruct the officer's lawful discharge of his duties, and accordingly, the officer had no probable cause to arrest for obstruction by flight when the flight was from a first-tier encounter that [Johnson] had every right to terminate. Accordingly, the officer's attempt to arrest [Johnson] for obstruction was unlawful because the officer lacked the requisite probable cause that [Johnson] committed that offense.

*Ewumi*, 315 Ga. App. at 662-663 (1) (a) (citation, punctuation and footnotes omitted). See also *Black*, 281 Ga. App. at 44 (1) (a defendant's "exercise of his right to avoid the police gave the police no grounds to grab him nor to arrest him for obstruction of justice"); *Dukes*, 279 Ga. App. at 251 (same).

In light of the foregoing, we reverse Johnson's conviction.

*Judgment reversed. McFadden, P. J., and Bethel, J., concur*.

7