A12A0617. EWUMI v. THE STATE.
(727 SE2d 257)

DILLARD, Judge.

Following a trial by jury, Deon Tremane Ewumi was convicted of felony obstruction, simple battery, and possession of less than one ounce of marijuana. On appeal from these convictions, Ewumi argues that the trial court erred by (1) denying his motion to suppress, (2) denying his motion for new trial based on insufficient evidence as to each count, and (3) failing to instruct the jury regarding the right to resist an unlawful arrest. Because the trial court erred in denying Ewumi's motion to suppress evidence based on an unlawful arrest and because the evidence is insufficient, we reverse his convictions.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that shortly after midnight on March 6, 2011, an officer was dispatched to an apartment complex in what was described as a high-crime area in Clayton County after shots were fired and a bullet entered a residence. Approximately 20 minutes later, the officer encountered 17-year-old Ewumi outside the relevant building while searching for shell casings on the ground. Ewumi was returning to his unit in the building after attending an event at school, and he was walking with a friend when he saw the officer.

---

[9] See *Christian,* 297 Ga. App. at 597 (1).

[10] See *Coney v. State,* 290 Ga. App. 364, 372-373 (3) (c) (659 SE2d 768) (2008).

[1] *See, e.g., Sidner v. State,* 304 Ga. App. 373, 374 (696 SE2d 398) (2010).

Ewumi and his companion emerged from behind a nearby garage, and the officer observed that Ewumi's head and hands were obscured by a hoodie (i.e., a hooded sweatshirt). The officer approached Ewumi and said that he wanted to ask some questions, but Ewumi did not stop and mumbled an inaudible response before walking away. Thereafter, the officer attempted to close the gap between himself and Ewumi,[2] and Ewumi began to run toward the building. He then ran upstairs to the second floor and tripped as he reached the top.

The officer pursued Ewumi and, immediately after the young man fell, climbed atop him and initiated an "arm-bar" technique to apply handcuffs.[3] Ewumi struggled against the officer to escape, kicking his legs about and throwing his elbows back and forth. Ewumi continued trying to climb toward his apartment, banging on the door and screaming for his mother. Meanwhile, the officer restrained one of his arms and gave verbal commands, but Ewumi continued to struggle. The officer called for backup, applied a taser directly to Ewumi's body, and eventually restrained and arrested him.

Upon arrival at the police station, an officer noticed that Ewumi was chewing something, which was determined to be a small amount of marijuana wrapped in paper. Thereafter, Ewumi was charged with and convicted of felony obstruction,[4] simple battery,[5] and possessing less than one ounce of marijuana.[6] This appeal follows.

1. Ewumi contends that the trial court erred by denying his motion to suppress evidence based on an unlawful stop and subsequent arrest. We agree.

At the outset, we note that in reviewing a trial court's decision on a motion to suppress, "we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous."[7] Moreover, because the trial court sits as the trier of fact, "its findings are analogous to a jury verdict and will

---

[2] At some point, Ewumi's unidentified companion left the scene.

[3] At the motion-to-suppress hearing, the officer described this technique as follows: "To place the arm behind the back in . . . a manner so that the . . . small of the wrist is near the small of the back."

[4] See OCGA § 16-10-24 (b) ("Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer . . . is guilty of a felony. . . .").

[5] See OCGA § 16-5-23 (a) ("A person commits the offense of simple battery when he or she either: (1) [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) [i]ntentionally causes physical harm to another.").

[6] See OCGA § 16-13-30 (j) (1) ("It is unlawful for any person to possess . . . marijuana.").

[7] In the Interest of J. B., 314 Ga. App. 678, 680 (1) (725 SE2d 810) (2012) (punctuation omitted).

not be disturbed if any evidence supports them."[8] Nevertheless, "we owe no deference to the way in which the court below resolved questions of law."[9] And in conducting our review, "we may consider trial testimony in addition to the testimony submitted during the motion to suppress hearing."[10] With these guiding principles in mind, we turn now to an analysis of Ewumi's argument that his arrest was unlawful.

The Supreme Court of the United States has construed the Fourth Amendment to the United States Constitution[11] so as to set forth three tiers of police-citizen encounters.[12] These encounters involve "(1) communication between police and citizens involving no coercion or detention . . . , (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause."[13]

In a first-tier encounter, "police may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave."[14] But it is well settled that "a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter."[15] Indeed, "[e]ven running from police during a first-tier encounter is wholly permissible."[16] And an individual "may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint . . . ."[17]

In a second-tier encounter, even in the absence of probable cause, a police officer may "stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity."[18] But to do so, the officer must have "more than a subjective, unparticularized suspicion or hunch."[19] Indeed, the officer's action "must be justified by specific and

---

[8] *Id.* (punctuation omitted).

[9] *Brandt v. State*, 314 Ga. App. 343 (723 SE2d 733) (2012).

[10] *Thompson v. State*, 313 Ga. App. 844, 846 (1) (723 SE2d 85) (2012) (punctuation omitted).

[11] U. S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .").

[12] *See, e.g., In the Interest of J. B.*, 314 Ga. App. at 680 (1).

[13] *Id.* (punctuation omitted).

[14] *Id.* (punctuation omitted); *accord State v. Dukes*, 279 Ga. App. 247, 248-49 (630 SE2d 847) (2006).

[15] *Black v. State*, 281 Ga. App. 40, 44 (1) (635 SE2d 568) (2006) (punctuation omitted).

[16] *Id.*

[17] *Celestin v. State*, 255 Ga. App. 792, 794 (1) (567 SE2d 82) (2002) (punctuation omitted).

[18] *Black*, 281 Ga. App. at 43 (1) (punctuation omitted); *accord Dukes*, 279 Ga. App. at 249.

[19] *Black*, 281 Ga. App. at 43 (1) (punctuation omitted).

articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion . . . ."[20] Additionally, the officer "must have some basis from which the court can determine that the detention was neither arbitrary nor harassing."[21]

And here, Ewumi moved to suppress the evidence found as a result of his arrest because he argued that the arrest was unlawful. But after hearing testimony from both the arresting officer and Ewumi, the trial court denied the motion, finding that the initial contact between the officer and Ewumi was a first-tier encounter; the officer's testimony was more credible; Ewumi made furtive and evasive movements; Ewumi ran from the officer and ignored a command to stop; given the late hour, high-crime location, and ongoing investigation, the encounter elevated to a justified second tier when Ewumi began to flee; and all of these factors made the arrest and subsequent search lawful. We disagree.

Both the testimony at trial and at the motion-to-suppress hearing established the same largely undisputed factual scenario: The officer approached Ewumi and indicated that he wished to speak with him; Ewumi muttered an inaudible reply and continued walking away; the officer approached Ewumi more quickly, asked him to come over, and Ewumi began to run toward his building; Ewumi ignored commands to stop; and a struggle ensued after Ewumi tripped on the stairway and *after* the officer attempted to handcuff and arrest him. Ewumi explained at both the motion-to-suppress hearing and at trial that he ignored the officer's commands because he "did nothing wrong" (although he admitted to not wanting the officer to discover the marijuana on his person), was merely trying to reach his home, and had not been informed that the officer was conducting an investigation.

Based on these facts, we agree with the trial court that the initial encounter between Ewumi and the officer—i.e., when the officer first approached Ewumi and indicated that he wished to speak with him—was a first-tier encounter.[22] Indeed, the State has not argued or attempted to show that the initial encounter was a second-tier such that the officer's conduct was supported by reasonable, articulable suspicion. As such, Ewumi was unquestionably entitled to walk away

---

[20] *Id.* (punctuation omitted).

[21] *Id.* (punctuation omitted).

[22] *See Dukes*, 279 Ga. App. at 249 (holding that officers' initial contact with defendant was first-tier encounter because they "did not seize [the defendant]; rather, they simply approached and questioned him without any seizure").

from same.[23]

And the fact that Ewumi exercised his right to walk away from a first-tier encounter and avoid the officer did not give rise to reasonable, articulable suspicion to instigate a second-tier encounter,[24] which the officer did by quickening his approach toward Ewumi and indicating that compliance with the request might be compelled.[25] Indeed, these facts present a situation that is different from those in which we have held that flight from a first-tier encounter warranted a stop *after* the citizen voluntarily spoke with an officer, gave suspicious answers to questions, and then fled.[26]

When the officer was asked why he continued to pursue Ewumi, he testified that he became suspicious when Ewumi appeared and began walking toward the building where gunshots were reported; thus, the officer wanted to identify Ewumi. And when pressed to describe what exactly was suspicious about Ewumi, the officer testified that it was after midnight in a high-crime area; Ewumi wore a hoodie that covered his head and obscured his hands in his pockets; he walked in a slumped position; and he stepped away from the officer upon the initial approach. The officer also testified that drugs and weapons are often found on individuals with whom officers make contact in that area, and opined that he continued to approach Ewumi because "[t]he fact that he started to walk away from me indicated that there was more to . . . my contact than what I initially knew of . . . . [Ewumi] was avoiding me for a reason." But the officer also admitted that Ewumi made no threatening gestures toward the officer upon being approached and did not act as though he had a weapon.

Even when considering the totality of the circumstances, these facts do not amount to an objective, articulable suspicion of criminal

---

[23] *See Black*, 281 Ga. App. at 44 ("[A] citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter." (punctuation omitted)).

[24] *See id.* ("Because this was a first-tier encounter which [the individual] had every right to avoid, the State's arguments that reasonable articulable suspicion existed are misplaced and incorrect.").

[25] *See Dukes*, 279 Ga. App. at 249 ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be . . . the use of language or tone of voice indicating compliance with the officer's request might be compelled." (punctuation omitted)).

[26] *See McClary v. State*, 292 Ga. App. 184, 186-87 (663 SE2d 809) (2008) (holding that a second-tier stop was warranted after defendant spoke with officer during first-tier encounter, provided a suspicious answer, and then made headlong flight as officer made further inquiry into the basis of the suspicious answer); *Crowley v. State*, 267 Ga. App. 718, 719 (601 SE2d 154) (2004) (same); *see also State v. Devine*, 276 Ga. App. 159, 160-61 (622 SE2d 854) (2005).

activity to warrant a second-tier detention.[27] It is well established that "mere presence in an area of suspected crime is not enough to support a reasonable, particularized suspicion that the person is committing a crime."[28] Moreover, an officer's feeling that a person is acting "in a suspicious way does not amount to a particularized and objective basis for suspecting him of criminal activity."[29] And here, none of Ewumi's described activities—walking away from the officer, ignoring the officer, being present in a high-crime area (and returning home from a school function), walking in a slumped position, and wearing a hooded sweatshirt in early March—are crimes in and of themselves, "nor are they enough to make an objective determination that [Ewumi] was about to be engaged in criminal activity."[30] Additionally, the mere refusal to identify oneself to an officer is not a crime.[31]

Furthermore, even if we assumed for the sake of argument that the officer obtained reasonable, articulable suspicion to conduct a second-tier stop *after* Ewumi began to run away,[32] this is not what ultimately occurred. Indeed, after Ewumi ran toward his building and fell on the stairway, it is undisputed that the officer *immediately* attempted an arrest solely on the basis of obstruction,[33] which required probable cause.[34] And in evaluating whether an individual's arrest was constitutionally valid and supported by probable cause,

---

[27] *See Brown v. State*, 301 Ga. App. 82, 86 (686 SE2d 793) (2009) (holding that defendant's presence in apartment complex where he was not a resident, in a high-crime area, wearing what the officer perceived to be a "suspicious" hoodie, and walking in a direction so as to avoid contact with the officer did not give rise to reasonable, articulable suspicion so as to justify a second-tier stop).

[28] *Crowley*, 267 Ga. App. at 719 (punctuation omitted); *see also Illinois v. Wardlow*, 528 U. S. 119, 124 (120 SC 673, 145 LE2d 570) (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.").

[29] *Celestin*, 255 Ga. App. at 795 (1).

[30] *Brown*, 301 Ga. App. at 85-86.

[31] *Wagner v. State*, 206 Ga. App. 180, 182 (424 SE2d 861) (1992).

[32] *See McClary*, 292 Ga. App. at 187 (defendant's act of fleeing from first-tier encounter, *inter alia*, provided reasonable, articulable suspicion for officer to pursue defendant and investigate suspected domestic dispute); *Crowley*, 267 Ga. App. at 719-20 (defendant's act of fleeing from first-tier encounter, *inter alia*, provided reasonable, articulable suspicion for officer to pursue defendant and investigate suspected crime).

[33] *See Dukes*, 279 Ga. App. at 251 ("[E]ven if we assume . . . that the officers had reasonable suspicion of illegal activity after [the defendant] fled, the undisputed fact is that the officers did not conduct the brief investigative stop that may have been justified by the circumstances. Instead, they executed a full-blown arrest for obstruction based solely on [the defendant's] flight.").

[34] *See id.* at 251 (holding, in case in which police pursued defendant after he fled from tier-one encounter, that "the controlling question presented by this appeal is whether the

we consider whether

> at [the] moment [of arrest] the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the person suspected had committed or was committing an offense.[35]

Here, although Ewumi was ultimately arrested for battery after the incident on the stairway, the officer testified that he initially attempted to handcuff and arrest Ewumi for misdemeanor obstruction. And based upon the record, as discussed infra, the officer lacked probable cause to arrest for *either* alleged offense.[36]

(a) As to obstruction, a person commits such an offense when he or she knowingly and wilfully "obstructs or hinders any law enforcement officer in the lawful discharge of his official duties"[37] or "resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer . . . ."[38]

And in the case sub judice, the officer testified that he believed Ewumi committed this offense by hindering his investigation of shots fired and whether there were witnesses, a suspect, or evidence in the area.[39] But as we held supra, Ewumi acted within his rights by avoiding a first-tier encounter, and thus, the officer lacked probable cause to justify an arrest for obstruction.[40] Indeed, because Ewumi

---

officers had probable cause to arrest [the defendant] for obstruction" and determining that officers did not); *see also Wardlow*, 528 U. S. at 126 (holding that defendant's headlong flight from police, after police spotted defendant holding opaque bag in an area known for narcotics trafficking, warranted a second-tier stop for further investigation, but also holding that if, in such a case, "the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way").

[35] *Hubbard v. State*, 311 Ga. App. 671, 673 (2) (716 SE2d 777) (2011) (punctuation omitted).

[36] *See Dukes*, 279 Ga. App. at 251.

[37] OCGA § 16-10-24 (a) (misdemeanor obstruction).

[38] OCGA § 16-10-24 (b) (felony obstruction).

[39] In this regard, the officer cited his attempt to make contact with Ewumi to obtain an identification, and the officer felt that Ewumi was obligated to comply when the officer commanded him to "come here a minute." However, we note that Ewumi was ultimately indicted for felony obstruction, in that he "knowingly and willfully obstruct[ed] [the officer] in the lawful discharge of his official duties by doing violence to said officer by kicking his legs, causing visible injury."

[40] *See Dukes*, 279 Ga. App. at 251 ("[B]y exercising his right to leave the first-tier encounter, [the individual] did not, as a matter of law or fact, hinder or obstruct the officers' lawful discharge of their duties."); *Black*, 281 Ga. App. at 46 (1) (noting that the exercise of a citizen's right to avoid a police officer in a first-tier encounter "may not provide the basis for elevating the encounter to a second-tier *Terry* stop"). *Compare Johnson v. State*, 264 Ga. App. 889, 891-92 (2) (592 SE2d 507) (2003) (when officer first approached individual, officer had reasonable,

had the right to leave the first-tier encounter,

> his exercise of that right, even if accomplished by running, cannot constitute obstruction. That is to say, even though the officer[ ] [was] lawfully discharging [his] duties at the time [Ewumi] fled, those official duties during the first-tier encounter did not include detaining [Ewumi] or preventing him from leaving.[41]

Additionally, the officer did not explain to Ewumi that he wished to speak with him as part of a pending investigation, instead only asking that Ewumi come over to answer some questions.[42] Therefore, by exercising his right to leave a first-tier encounter, as a matter of law, Ewumi did not hinder or obstruct the officer's lawful discharge of his duties, and accordingly, the officer "had no probable cause to arrest for obstruction by flight when the flight was from a first-tier encounter that [Ewumi] had every right to terminate."[43] Accordingly, the officer's attempt to arrest Ewumi for obstruction was unlawful because the officer lacked the requisite probable cause that Ewumi committed that offense.[44]

(b) As to battery, the struggle between Ewumi and the officer began when the officer attempted the unjustified arrest for obstruction.[45] Thus, the officer lacked probable cause to arrest Ewumi for battery because the struggle ensued only *after* the officer attempted to arrest Ewumi for obstruction, and because that arrest was unlawful, Ewumi was justified in resisting the attempted arrest with all

---

articulable suspicion to conduct investigative stop, and individual was guilty of obstruction for fleeing from lawful command to stop); *Patterson v. State*, 244 Ga. App. 222, 223 (2) (535 SE2d 269) (2000) (because police had reasonable articulable suspicion of criminal drug activity, command to halt was lawful and defendant's act of fleeing constituted obstruction).

[41] *Dukes*, 279 Ga. App. at 251.

[42] *Compare Sprinkles v. State*, 227 Ga. App. 112, 112-13 (1) (488 SE2d 492) (1997) (individual was informed that officer was conducting an investigation and that individual needed to remain while the officer conducted investigation).

[43] *Dukes*, 279 Ga. App. at 251.

[44] *See Wagner*, 206 Ga. App. at 183 (when defendant's sole offense was a refusal to give his name, there was no probable cause for arrest and "physical resistance to arrest, which was the alleged obstruction, did not hinder the officer in the lawful discharge of his official duties"). *Compare Mathis v. State*, 250 Ga. App. 500, 500 (552 SE2d 97) (2001) (sufficient evidence of obstruction when officer had probable cause to arrest for disorderly conduct but defendant slapped officer as he attempted to make such arrest); *Sprinkles*, 227 Ga. App. at 113 ("The officers had grounds to arrest [the defendant] for obstruction when she pushed an officer aside and left after being told the officer needed to talk to her as part of the investigation and being ordered to wait.").

[45] Ewumi was indicted for simple battery in that he "intentionally [made] physical contact of an insulting and provoking nature with [the officer], by hitting him with his elbows, and at the time of said offense, [the officer] was engaged in the performance of his official duties."

force that was reasonably necessary to do so.[46] Indeed, a police officer "is *not* discharging his lawful duty when he arrests an individual without reasonable or probable cause."[47] Because "[i]f there is probable cause to believe a person committed a crime, if a crime is committed in the officer's presence or within his knowledge, or if there is a likely failure of justice, an arrest without a warrant is authorized; otherwise it is not."[48] Accordingly, under the facts of this case, Ewumi was unlawfully arrested for battery,[49] and the evidence discovered as a result of Ewumi's unlawful arrest should have been suppressed at trial.[50]

2. Ewumi also contends that the evidence of felony obstruction, simple battery, and possession of marijuana was insufficient to sustain his convictions.[51] We agree.

At the outset, we note that "[o]n appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence."[52] And in conducting our review, "[w]e neither weigh the evidence nor judge the credibility of witnesses, but determine only whether . . . a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[53]

(a) *Felony Obstruction.* First, as to felony obstruction, because we held in Division 1 that the officer attempted an unlawful arrest for

---

[46] *See Sidner*, 304 Ga. App. at 376 (3) (holding that in Georgia, "a person has the right to resist an unlawful arrest" and has the right to do so "with all force necessary for that purpose" (punctuation omitted)); *Celestin*, 255 Ga. App. at 793 (1) ("One is free to resist an illegal arrest."); *Wagner*, 206 Ga. App. at 182 ("If the arrest was legal he had no right whatever to resist it; if it was illegal, he had the right to resist with all force necessary for that purpose." (punctuation omitted)). *Compare McClary*, 292 Ga. App. at 187-88 (arrest for obstruction lawful when defendant fled from a first-tier encounter, officer had reasonable, articulable suspicion to warrant a second-tier stop to investigate suspected domestic dispute, defendant ignored commands to stop, and defendant struggled with officer when officer apprehended defendant).

[47] *Sidner*, 304 Ga. App. at 376 (3) (punctuation omitted); *accord Wagner*, 206 Ga. App. at 182.

[48] *Sidner*, 304 Ga. App. at 376 (3) (punctuation omitted); *accord Wagner*, 206 Ga. App. at 182.

[49] *Compare Strickland v. State*, 265 Ga. App. 533, 538-40 (594 SE2d 711) (2004) (when defendant was subjected to unlawful *stop*, not an unlawful arrest, defendant's act of committing battery against officer was not justified and the battery thus "provided an independent basis for [his] further detention, rendering his apprehension lawful").

[50] *See Dukes*, 279 Ga. App. at 251.

[51] *See Lackey v. State*, 246 Ga. 331, 333-34 (2) (271 SE2d 478) (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. Respondent is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." (punctuation omitted)).

[52] *Sidner*, 304 Ga. App. at 374 (punctuation omitted).

[53] *Id.* (punctuation omitted).

misdemeanor obstruction, Ewumi's attempt to resist that arrest cannot form the basis of a conviction for felony obstruction because the officer was not engaged in the *lawful* discharge of official duties.[54] Accordingly, that conviction must be reversed because the State failed to prove a necessary element of the offense.[55]

(b) *Simple Battery.* As to Ewumi's conviction for simple battery, it too must be reversed. A person commits this offense "when he or she either: (1) [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) [i]ntentionally causes physical harm to another."[56] Although the offense is generally a misdemeanor, it becomes a misdemeanor of a high and aggravated nature under certain circumstances, such as when it is committed against a police officer engaged in carrying out official duties.[57] And as previously noted, Ewumi was indicted for this offense in that he "intentionally [made] physical contact of an insulting and provoking nature with [the officer], by hitting him with his elbows, and at the time of said offense, [the officer] was engaged in the performance of his official duties."

First, as we held supra, the officer was not engaged in his official duties when the struggle with Ewumi ensued because, at that time, the officer was attempting to arrest Ewumi without probable cause. But in addition to this, the State also failed to prove the necessary element of contact because there was no testimony that Ewumi's elbows actually made contact with the officer.[58]

Ewumi testified in his own defense and denied elbowing (or kicking) the officer. But the officer testified that as he attempted the arm-bar technique on Ewumi, "he started kicking his legs and . . . throwing elbows back and forth, trying to wiggle free from my grip." Later, he again repeated that Ewumi kicked at his legs and "appeared

---

[54] *See supra* note 44.

[55] *See* OCGA § 16-10-24 (b); *see Curtis v. State,* 285 Ga. App. 298, 300 (1) (a) (645 SE2d 705) (2007) ("[T]he State was required to prove the lawfulness of the arrest in order to prove an essential element of the obstruction offense against [the defendant]."); *see also Brooks v. State,* 206 Ga. App. 485, 489 (2) (425 SE2d 911) (1992) (defendant was authorized to resist unlawful arrest; thus, conviction for obstruction based on act of pushing officer required reversal for insufficient evidence).

[56] *See* OCGA § 16-5-23 (a).

[57] *See* OCGA § 16-5-23 (b) (providing for punishment as a misdemeanor); OCGA § 16-5-23 (e) (providing for higher degree of punishment when offense committed against members of law enforcement).

[58] *See Hancock v. State,* 188 Ga. App. 870, 870 (374 SE2d 757) (1988) ("Physical contact is required to prove simple battery."). *Cf. Davis v. State,* 308 Ga. App. 7, 17 (5) (706 SE2d 710) (2011) (holding that there was no error in failing to include a charge on lesser-included offense of simple battery when "there was no evidence that [the defendant] made physical contact with [the victim]").

to be throwing elbows behind him to break free" from the officer's grip. Nevertheless, although the officer testified that Ewumi made contact by kicking the officer's legs, which formed the basis of the felony obstruction charge, there was no evidence that Ewumi made contact with his elbows, which was the basis for the simple battery charge. Indeed, the State argued at sentencing that the convictions for felony obstruction and simple battery should not merge because, just as the indictment alleged, the convictions were based on different actions (i.e., kicking versus elbowing), thereby limiting the simple battery count to the allegation that Ewumi threw his elbows.[59] Accordingly, because the State failed to prove the necessary element of contact, Ewumi's conviction for simple battery must be reversed.[60]

(c) *Possession of Marijuana.* Finally, as to Ewumi's conviction for possessing less than one ounce of marijuana, because the police discovered the marijuana as the result of an illegal arrest, this conviction must also be reversed.[61]

3. Given our holdings in Divisions 1 and 2, we need not address Ewumi's remaining enumeration of error.

Accordingly, for all the foregoing reasons, we reverse Ewumi's convictions.

*Judgment reversed. Ellington, C. J., and Phipps, P. J., concur.*

DECIDED APRIL 18, 2012.

*Stanley W. Schoolcraft III,* for appellant.
*Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney,* for appellee.

---

[59] *See Pearson v. State,* 224 Ga. App. 467, 468 (1) (480 SE2d 911) (1997) ("Simple battery may arise out of the same facts and circumstances as an obstruction charge, but it would be merged with felony obstruction, if there is a conviction.").

[60] *See Hancock,* 188 Ga. App. at 870; *see also Neal v. State,* 264 Ga. App. 311, 313 (2) (b) (590 SE2d 168) (2003) ("[S]imple battery [requires] intent and contact of an 'insulting or provoking nature' or contact causing physical harm."). *Cf. Davis,* 308 Ga. App. at 17 (5).

[61] *See Celestin,* 255 Ga. App. at 794-95 (1) (because drugs were seized during an illegal stop of the defendant, the drugs could not be used as evidence against him and conviction for drug offense required reversal); *see also Cuyuch v. State,* 284 Ga. 290, 295 (3) (667 SE2d 85) (2008) (reversal required when inadmissible evidence is the sole basis for conviction).